UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERMAN AUSTIN,

                     Petitioner,                      Case No. 08-11364
                                                Honorable David M. Lawson

v.

CAROL R. HOWES,

                     Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Michigan prisoner Sherman Austin seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, filed through counsel, the petitioner challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was found guilty of those charges by a jury in the Wayne County, Michigan circuit court. The petitioner argues that the trial court improperly recognized a Fifth Amendment privilege for a defense witness, he was denied his right to present a defense, his right to confrontation was violated by admission of the victim's dying declarations, he received ineffective assistance of counsel, and the prosecutor committed misconduct. The respondent filed a response to the petition arguing that the claims lack merit and that review of the Confrontation Clause issue is barred because the petitioner did not preserve it in the state proceedings by making a contemporaneous objection. The Court does not reach the procedural violation issue because it finds that the petitioner's claims lack merit. The Court, therefore, will deny the petition.

I.

The petitioner was charged with first-degree murder and felony firearm for shooting and killing Earl Bowen on April 20, 2001 in Detroit. Bowen was the former boyfriend of the petitioner's daughter, Shatoya "Toya" Austin.

Monica Bowen, Earl Bowen's cousin, testified that she lived in the same home as Earl at the time of the shooting. She testified that she was awakened at approximately 5:40 a.m. on April 20, 2001 by the sound of gunshots. She called 911, then heard Bowen calling to her from outside. He told her that his leg was going numb and could not talk. The 911 operator repeatedly asked Monica Bowen to ask her cousin who shot him. Bowen finally responded, "Toya's daddy." Trial Tr., Vol. II, June 3, 2004, at 82.

Detroit Police Officer Khary Mason testified that when he responded to the 911 call, he found Bowen lying on the ground with two bullet holes in his upper chest. Officer Mason asked Bowen who shot him, but Mason could not understand Bowen's response. Officer Mason accompanied Bowen to the hospital and continued questioning him. Eventually, he was able to understand that Bowen said the petitioner shot him.

Derrick Green testified that he was incarcerated at the Wayne County Jail awaiting sentencing on a murder conviction. In late December 2003, the petitioner was also incarcerated at the Wayne County Jail. The two began talking about their cases and the petitioner told Green that he had killed a man named Earl. He referred to the victim as his son-in-law. Green further testified that the petitioner told him that he hid in the bushes, waited for the victim to get into his car, and then shot the victim. The victim tried to crawl out from the passenger's side. Green testified that he was not testifying pursuant to a plea agreement, although his sentencing was postponed until after his testimony in the petitioner's case.

-2-

Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agent Michael Yott testified that he became involved in the investigation of Bowen's murder because Bowen previously had been an informant for ATF. Yott interviewed the petitioner on April 3, 2003. The petitioner told him that the relationship between his daughter, Shatoya, and Bowen had sometimes been violent. At one point, the petitioner and Bowen were involved in a fistfight prompted by Bowen's alleged assault of Shatoya. The evening before the homicide, police were called to the petitioner's father's residence because of an altercation between Shatoya and Bowen. When Yott asked the petitioner about the homicide, the petitioner leaned back in his chair, laughed, and indicated there were no witnesses to the crime.

The Chief Medical Examiner for Wayne County testified that Bowen died from five gunshot wounds.

The defense presented several witnesses, including Shatoya Austin, Deborah Simpson, and the petitioner. Shatoya testified that Earl Bowen previously had been her boyfriend and was the father of her child. On April 19, 2001, she and Bowen argued about her failure to return one of his phone calls. He pushed and punched her and took some of her belongings and carried them out of her grandfather's home. She locked him out of the home. Bowen threw a rock through the windshield of her vehicle. He then left. Shatoya testified that she called police, who responded to the scene and took a statement from her. The petitioner came to the home when the police were there and was aware of the fight. He left the home that evening to pick up his girlfriend, Deborah Simpson. Shatoya also left the home. Hours later, at approximately 4:00 a.m., Shatoya returned to her grandfather's home. As she was getting out of her vehicle, Bowen tried to run her over. She

-3-

escaped unharmed. She did not call the police and denied calling her father. She testified that she simply went into her grandfather's home and fell asleep.

Deborah Simpson testified that at the time Bowen was shot, she and the petitioner were a couple. However, she could not remember whether she and the petitioner were living together at the time of the shooting or whether the petitioner was with her when the shooting was said to have occurred.

The petitioner also tried to call Donald DeShazo as a witness to rebut the testimony of prosecution witness Derrick Green. DeShazo asserted a Fifth Amendment privilege, and the trial court barred all his testimony.

The petitioner, testifying in his own defense, said that he was living with Simpson at the time of the shooting. On the evening of April 19, 2001, he picked Simpson up from work at approximately 11:00 p.m. He testified that he drove her home, arriving at approximately 11:30 p.m., and did not leave the home until the next morning at approximately 7:00 a.m. He denied laughing when Agent Yott accused him of killing Bowen. He denied shooting Bowen.

The jury apparently did not credit the petitioner's testimony and found him guilty of first-degree murder and felony firearm. On June 24, 2004, he was sentenced to life imprisonment without possibility of parole for the murder conviction and two years' imprisonment for the felony firearm conviction.

The petitioner filed a direct appeal in the Michigan Court of Appeals, raising the following claims: (i) trial court erred in recognizing a Fifth Amendment privilege against self-incrimination for a defense witness; (ii) the petitioner was denied his right to present a defense when the trial court precluded *all* testimony from a defense witness based on the Fifth Amendment privilege; (iii) the

-4-

victim's hearsay statement improperly admitted; (iv) ineffective assistance of counsel; and (v) prosecutorial misconduct. The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Austin*, No. 256612, 2005 WL 3440479 (Mich. Ct. App. Dec. 15, 2005). The Michigan Supreme Court denied leave to appeal. *People v. Austin*, 477 Mich. 872, 721 N.W.2d 582 (2006).

The petitioner then filed the pending petition for a writ of habeas corpus. He raises the same claims raised in state court. The state filed a response contesting the merits of those claims.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The distinction between mere error and an objectively unreasonable application of Supreme

Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.

The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and

demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---,

---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on

grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours,

its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise,

and the judge neither asked for elaboration of the foreperson's answers nor took any other measures

to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal

quotation marks and citations omitted)); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir.

2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485,

493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475

F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v.*

*Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the

record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398

(2011).

A.

The petitioner argues that the trial court violated his right to present a defense because the

court recognized a Fifth Amendment privilege against self-incrimination for a defense witness,

Donald DeShazo, when the proposed questions could not have yielded incriminating answers.  The

petitioner contends that the trial court compounded the error by precluding *all* testimony from DeShazo rather than requiring him to invoke the privilege on a question-by-question basis.

The petitioner sought to call DeShazo as a witness to rebut the testimony of prosecution witness Derrick Green, who related the petitioner's jailhouse confession. Green testified that while incarcerated on the same cell block as the petition in late 2003, the petitioner told him that he had killed a man named Earl, whom he referred to as his son-in-law. Green testified that the petitioner told him that he hid in the bushes and shot the man while he was still in his car and that the man tried to crawl from the passenger door. The petitioner told him that the crime occurred in 2000.

Before Green testified there was an extensive colloquy about proposed defense witness DeShazo. The defense represented that DeShazo would undermine Green's credibility because he would testify that he saw Green sneak into the petitioner's cell and rifle through the petitioner's discovery material, thereby explaining Green's knowledge about specific facts of the case. The prosecutor disclosed that if DeShazo testified, he would cross-examine DeShazo about his potential bias and motives for testifying, since DeShazo claimed to be the victim of record-pilfering as well. It appears that DeShazo and two co-defendants, Potter and Williams, were charged with homicide in an unrelated case. Potter had already stood trial and was convicted in large part on the testimony of two jailhouse informants. In an effort to undermine the credibility of the informants, Potter presented testimony in his own trial that the jailhouse informants stole discovery material from his cell. Those same jailhouse informants were expected to testify against DeShazo at his upcoming trial. In this case, the prosecutor advised the trial court judge that if DeShazo testified, he would question DeShazo about the jailhouse informants, the similar circumstances of an alleged cell-break-in, and DeShazo's motivation to undermine Green's credibility.

DeShazo's attorney then informed the Court that he would advise his client to exercise his Fifth Amendment right to be free from compelled self-incrimination with respect to all questions related in any way to his homicide case. The trial court suggested that DeShazo could testify about his observations at the jail without incriminating himself, but DeShazo rightfully could invoke his Fifth Amendment privilege with respect to all questions related to the pending criminal charges against him. After a thoughtful and thorough discussion of the issues presented, the trial court decided that allowing DeShazo to testify with the knowledge that he would invoke his Fifth Amendment privilege would hamstring any efforts by the prosecution to explore his bias and motives for testifying. The trial court decided that DeShazo could not be as a witness.

The Michigan Court of Appeals held that the trial court acted properly when excluding DeShazo's testimony, reasoning:

> Under the Fifth Amendment, an individual may decline to testify at any criminal proceeding where the answers may incriminate him in a future criminal proceeding. If a potential defense witness has a Fifth Amendment privilege against incriminating himself, that privilege overrides a defendant's right to compel testimony. However, this privilege against self-incrimination may only be asserted where the trial court determines that there is a reasonable basis for a witness to fear incrimination. *People v. Dyer*, 425 Mich. 572, 578, 390 N.W.2d 645 (1986). "[A] trial court may compel a witness to answer a question only where the court can foresee, as a matter of law, that such testimony could not incriminate the witness." *Id.* at 579. Thus, the trial court decides whether a witness's silence is justified based on the facts in evidence.
>
> In this case, the witness, "DeShazo," was an inmate facing trial on a homicide charge. One of DeShazo's codefendants had already been convicted, largely through the testimony of a jailhouse witness. DeShazo was expected to testify that he saw inmate Derrick Green, a prosecution witness, in defendant's cell going through defendant's discovery materials while defendant was not present. The prosecutor indicated that he intended to ask DeShazo about how his codefendant presented witnesses at his trial to show that the jailhouse witness stole discovery materials to fabricate his testimony and to show that defendant wished to use a similar tactic to discredit Green's testimony. Defense counsel stated that if the prosecutor asked any questions about DeShazo's pending trial, he would advise DeShazo to invoke his Fifth Amendment right against self-incrimination. The trial court conducted the

proper inquiry and determined that testimony about the case pending against him would be potentially incriminating to DeShazo and that DeShazo would invoke his constitutional privilege. The trial court did not abuse its discretion by refusing to allow defendant to call DeShazo to the stand.

Further, the trial court did not have to allow defense counsel to call DeShazo and have DeShazo invoke his Fifth Amendment privilege on a question-by-question basis. A lawyer may not knowingly call a witness when he is aware that the witness will claim a valid privilege not to testify. . . . Because DeShazo would have a valid right to invoke his Fifth Amendment privilege on relevant questions that the prosecutor would ask, the trial court did not abuse its discretion by refusing to allow DeShazo to testify.

*Austin*, 2005 WL 3440479 at *1-2 (citations omitted).

The Sixth Circuit has recognized, albeit in an unpublished opinion, that "allowing a privilege-invoking witness to testify requires a balancing of potential prejudice." *United States v. Ballard*, 280 F. App'x 468, 470 (6th Cir. 2008). The Sixth Circuit explained:

When a defendant calls a witness to the stand with the understanding that the witness will assert his Fifth Amendment privilege, it becomes impossible to determine whether the privilege is asserted to obfuscate the factfinder or whether it is invoked out of a genuine desire to avoid self-incrimination. Although witnesses can only invoke their Fifth Amendment privilege "where it is 'grounded on a reasonable fear of danger of prosecution,'" *United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999) (quoting *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998)), and a witness "cannot meet the reasonable fear-of-prosecution prong by simply making a blanket assertion of the privilege," *id.*, because such a witness cannot be examined or cross-examined, the jury proceeds through inferences and therefore there exists no explicit statements from which the witness may be held accountable. This, coupled with the fact that the jury may draw an improper inference of guilt from the witnesses's invocation of silence, creates potential for collusion between the witness and defendant.

*Id.* at 470-71.

*Ballard* involved a case on direct review of a criminal conviction, but the reasoning and principles applied in that case apply here with equal force. Additionally, the petitioner has not cited and the Court has found no Supreme Court precedent that contradicts *Ballard* or would require

allowing a witness to testify under similar circumstances.  The state court's conclusion that the privilege would be properly invoked and that allowing the witness to testify and invoke the privilege on a question-by-question basis would unfairly preclude meaningful cross-examination was not contrary to or an unreasonable application of clearly-established Supreme Court precedent.

B.

Next, the petitioner argues that the trial court improperly admitted the victim's dying declarations identifying him as the shooter in violation of his rights under the Confrontation Clause. The respondent argues that this claim is procedurally defaulted because defense counsel did not challenge the admissibility of the dying declaration at trial.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of the claim.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted).  The right to a trial by jury is predicated upon the belief "'that the

-11-

'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965)).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause, regardless of whether the trial court finds the statements to be reliable, unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. The Supreme Court, however, indicated that dying declarations may be an historical exception to the rule against admission of hearsay testimony:

> The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis*.

*Id.* at 56 n.6 (citations omitted). The Supreme Court recognized this long-standing exception to the exclusion of testimonial dying declaration statements again in *Giles v. California*, 554 U.S. 353, 358 (2008) ("We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying." (internal citation omitted)).

The Supreme Court's recent decision of *Michigan v. Bryant*, --- U.S. ---, 131 S. Ct. 1143 (2011), does not address the question whether a dying declaration is an historical exception to the confrontation Clause. But it does conclude that a statement given in circumstances similar to Earl Bowen's statement here was nontestimonial under the definition announced in *Davis v. Washington*,

-12-

547 U.S. 813, 822 (2006) (holding that a statement is testimonial "when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.").  In *Bryant*, the Court determined that a statement made to the police by a dying man who was shot through the door of the shooter's house, drove to a gas station several blocks away, and was found on the ground in the parking lot next to his car, was nontestimonial because the primary purpose of the police interrogation was "to enable police assistance to meet an ongoing emergency."  *Bryant*, 131 S. Ct. at 1167 (quoting *Davis*, 547 U.S. at 822).   The Court determined that "the police responded to a call that a man had been shot. . . ., they did not know why, where, or when the shooting had occurred [or] . . . the location of the shooter or anything else about the circumstances in which the crime occurred"; "[t]he questions they asked . . . were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public"; and "the informality of the situation and the interrogation" all supported the conclusion that the primary purpose of the interrogation was not to establish the facts of the case for use in a later prosecution. *Id.* at 1166-67.  Therefore, the Court concluded, admission at trial of the deceased's statement to the police did not violate the Confrontation Clause.

The Court's *Bryant* decision is not without its critics.  *See Bryant v. Michigan*, 131 S. Ct. 1143, 1168 (2011) (Scalia, J., dissenting) ("Today's tale — a story of five officers conducting successive examinations of a dying man with the primary purpose, not of obtaining and preserving his testimony regarding his killer, but of protecting him, them, and others from a murderer somewhere on the loose — is so transparently false that professing to believe it demeans this institution.  But reaching a patently incorrect conclusion on the facts is a relatively benign judicial

-13-

mischief; it affects, after all, only the case at hand.  In its vain attempt to make the incredible

plausible, however — or perhaps as an intended second goal — today's opinion distorts our

Confrontation Clause jurisprudence and leaves it in a shambles.  Instead of clarifying the law, the

Court makes itself the obfuscator of last resort.").  But it does shed light on the Supreme Court's

conception of dying declarations and the Confrontation Clause.

Considering *Bryant* along with the *dicta* in *Crawford* and *Giles* that dying declarations

historically were exempt from the requirements that the Confrontation Clause was intended to

enforce, it can hardly be said that there is clearly established Supreme Court precedent that might

favor the petitioner's argument on this issue.  In fact, the contrary may well be true.  In all events,

he has not established entitlement to a writ of habeas corpus as a result of the admission at trial of

Earl Bowen's statement to the police.

C.

In his fourth habeas claim, the petitioner argues that the prosecutor committed misconduct

by engaging in improper, argumentative cross-examination of him and denigrating him and defense

counsel in closing argument.

It is well-established that prosecutors must "'refrain from improper methods calculated to

produce a wrongful conviction.'"  *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v.

United States*, 295 U.S. 78, 88 (1935)).  However, "[c]laims of prosecutorial misconduct are

reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)

(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct may

warrant habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make

the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

-14-

(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'"  *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).  The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'"  *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Court first considers whether the prosecutor's conduct or remarks were improper.  *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006).  If they were, the Court then must decide whether the improper acts were so flagrant as to warrant relief.  *Id.* at 516.  The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant:  "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally."  *Ibid.* (citation omitted).

The petitioner argues that the prosecutor improperly asked him to comment on the credibility of a prosecution witness, Sergeant Yott.  Defense counsel's objection to the question was sustained, but not before the petitioner called Sergeant Yott a liar.  The Michigan Court of Appeals held that the question and answer did not prejudice the petitioner because the objection was sustained, the jurors were advised that stricken testimony and excluded evidence were not to be considered, and jurors are presumed to follow the court's instructions.  The state prosecutor's question unquestionably was improper.  However, the question was an isolated one and the court sustained

the objection.  The Court cannot find that the state court's conclusion was contrary to or an unreasonable application of Supreme Court precedent.

The petitioner also argues that the prosecutor engaged in misconduct by pointing out that the petitioner did not have records to support some of his testimony and by arguing with the petitioner about the volume of discovery material and when it was produced.  Defense counsel's objections to this line of questioning also were sustained.  The trial judge instructed the jury that  the prosecutor's statements about discovery should be stricken.  The Michigan Court of Appeals held that the petitioner was not deprived of a fair trial by the prosecutor's questions and that the prosecutor is permitted to comment on a defendant's failure to produce evidence supporting his testimony.  An argument that the defense's failure to produce evidence to contradict or call into question the prosecution evidence does not amount to an attempt by the prosecutor to shift the burden of proof.  Moreover, the trial court's instructions to the jury unambiguously established that the prosecutor bore the burden of proof with respect to each element of the crimes.  Therefore, the petitioner has not established prosecutorial misconduct despite the prosecutor's improper questions.

Next, the petitioner argues that the prosecutor acted improperly during the following exchange:

> Patrick Muscat [Prosecutor]: Listen to my questions.  I'm sorry, but you got to listen to my questions.  You can't just ramble.
>
> Defendant:     I'm sorry.  I'm just trying to help.
>
> Prosecutor:     I doubt that, but just listen.

Trial Tr., June 8, 2004, at 147.

The Michigan Court of Appeals held that because the prosecutor promptly resumed a regular line of questioning after this comment, he committed no misconduct that denied the petitioner his

-16-

right to a fair trial.  This Court is constrained to agree.  The prosecutor's conduct throughout the trial displayed a regrettable lack of professionalism.  His questions were inappropriate and needlessly argumentative, and his comments were disrespectful.  But the conduct was not flagrant and it did not deflect the jury from considering the actual issues in the case.  The comment would have been better left unsaid, but it certainly should not been a surprise to the jury that the prosecutor did not believe that the petitioner was "just trying to help."  The comment did not deprive the petitioner of a fair trial.

Finally, the petitioner argues that the prosecutor engaged in misconduct by calling him a liar during closing argument and labeling defense counsel cowardly.  The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's remarks did not rise to the level of prosecutorial misconduct.  The court explained:

> The prosecutor stated that defendant's testimony showed that he was a liar.  The prosecutor also stated that there was no credible evidence to support defense counsel's argument that Officer Khary Mason was lying and that defense counsel making such an argument was cowardly.  A prosecutor has "great latitude" in making his arguments and statements at trial.  *People v. Bahoda*, 448 Mich. 261, 282; 531 N.W.2d 659 (1995).  A prosecutor may draw inferences from the evidence, but may not argue facts not in evidence or mischaracterize the evidence. . . . Although the prosecutor has a duty to ensure that the defendant receives a fair trial, he also has a duty to advocate the conviction of the guilty.  "Prosecutors may use 'hard language' when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms."  *People v. Ullah*, 216 Mich. App. 669, 678; 550 N.W.2d 568 (1996).  A prosecutor's remarks must be read in context. . . . In this case, the statement regarding defendant and defense counsel referenced the evidence and drew inferences from the testimony presented.  The prosecutor specifically mentioned the evidence that led him to draw such conclusions, and thus made proper arguments.

*Austin*, 2005 WL 3440479 at *4 (citations omitted).

It is clearly inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel.  *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996).  Prosecutors may

-17-

not "make unfounded and inflammatory attacks on the opposing advocate," *Young*, 470 U.S. at 9, "or argue that counsel is attempting to mislead the jury," *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008). Prosecutors may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

A prosecutor's description of defense counsel's argument as a red herring, a smoke screen, or a distraction is not *per se* improper. *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992). Such arguments can be reversible error when the prosecutor makes "personal, unsubstantiated attacks on the character and ethics of opposing counsel" and accuses defense counsel of conspiring with the defendant to fabricate testimony. *See United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005). Here, it is unclear whether the prosecutor was referring to defense counsel or the defense strategy as "cowardly." Read in context, the comment cannot be found unequivocally to be a personal attack on defense counsel. The comment can be construed to attack the defense's theory and to urge the jury to consider that the defense questioned the credibility of Officer Mason but failed to take the opportunity to cross-examine Officer Mason about the truthfulness of his testimony.

Similarly, although "[a] prosecutor should not give his own opinion as to the credibility of witness[,] . . . this does not mean that the prosecution cannot attack the defendant's credibility or even assert that the defendant is lying." *West*, 550 F.3d at 565 (internal citations omitted). A prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). "Where there is conflicting testimony, it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *Collins*, 78 F.3d at 1040. The

prosecutor's references in this case to the petitioner as a liar were permissible attacks on the petitioner's credibility.

The Court cannot conclude that the state court of appeals unreasonably viewed the tenor or effect of the state prosecutor's comments and questions.  Therefore, the Michigan Court of Appeals's determination that the prosecutor's conduct did not deprive the petitioner of a fair trial is not contrary to, nor an unreasonable application of, federal law or the facts.

D.

Finally, the petitioner asserts that he received ineffective assistance of counsel because his trial lawyer failed to object to the admission of the victim's dying declarations and the prosecutor's bad misconduct.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced him.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A court's review of counsel's performance must be "highly deferential."  *Id.* at 689.

An ineffective assistance of counsel claim based on counsel's failure to object to prosecutorial misconduct "hinges on whether the prosecutor's misconduct was plain enough for a

-19-

minimally competent counsel to have objected." *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000).

The Michigan Court of Appeals, found that the claim was not preserved for review and therefore conducted a plain error review. The state court held that counsel was not ineffective by failing to object to the admission of the dying declarations, which the court held were properly admitted. Further, the court held that the prosecutor's conduct did not deny the petitioner a fair trial and counsel's failure to object, consequently, also was not ineffective.

This Court determined above that the prosecutor's conduct was not so severe or flagrant as to deprive the petitioner of a fair trial, that is, a trial whose outcome is subject ot question. Because the prosecutor's antics did not undermine confidence in the outcome of the proceedings, the petitioner cannot establish the prejudice component of the *Strickland* test. Even if defense counsel's performance was deficient, his failure to object did not deprive the petitioner of his right to counsel under the Sixth Amendment. *See Post v. Bradshaw*, 621 F.3d 406, 414 (6th Cir. 2010) (stating that "if the defendant cannot establish prejudice, we need not consider whether counsel's performance was deficient" (citing *Berghuis v. Thompkins*, --- U.S. ---, ---, 130 S. Ct. 2250, 2264 (2010))).

### III.

The state court decisions in this case were not contrary to federal law, did not unreasonably apply federal law, or amount to an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 2, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 2, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---